IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SHERONDA POWELL**, <br><br> Plaintiff, <br><br> v. <br><br> **DOANE UNIVERSITY**, <br><br> Defendant. | Civil Action <br> Case No. _____ <br><br><br><br> **COMPLAINT AND JURY DEMAND** |

**COMES NOW** the Plaintiff, Sheronda Powell, by and through her attorneys, and for her causes of action hereby states the following:

## INTRODUCTION

1. Plaintiff Sheronda Powell ("Powell" or "Coach Powell") brings this action against the Defendant Doane University ("Doane") for damages, equitable and other relief, for gender discrimination and race discrimination in her employment in violation of her rights under state and federal law.

2. Coach Powell was impacted by gender and racial bias and stereotypes in the assessment of her performance and retaliated against for bringing forward concerns and complaints of gender and race inequities.

3. Coach Powell was held to a different and higher standard than white male coaches who were given more resources and opportunities to be successful in their programs than Coach Powell.

4. Coach Powell was fired for advocating on behalf of female student athletes to be treated fairly and equitably.

1

5. Coach Powell was retaliated against after advocating that her program not be ignored and provided with less resources than programs that were coached by males.

6. Coach Powell was retaliated against when her student athletes voiced their concerns that they were being treated unequally.

7. Defendant Doane chose to fire a great coach because she advocated for gender and race equality on behalf of herself, her program, and her student athletes, in an effort to silence her and others who might bring concerns forward.

## SUMMARY OF THE CLAIMS

8. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* (hereinafter "Title IX"), and of the Nebraska Fair Employment Practice Act, Ch. 20-301, et seq.

9. Title VII protects employees from gender-based discrimination and retaliation in the terms and conditions of their employment.

10. The NFEP protects employees from gender discrimination and retaliation in terms and conditions of their employment.

11. Title IX prohibits gender discrimination in educational institutions that receive federal financial assistance like Doane.

12. Title IX prohibits gender discrimination in all of Doane's programs and activities including athletics.

13. Title IX ensures equal access to facilities, equipment and funding for male and female college student athletes.

14. Title IX also protects students and faculty who complain about equity issues, including equal access to opportunities and competitiveness in athletic programs and from retaliation.

15. Title VII employment claims can be brought contemporaneously with Title IX employment discrimination claims.[1]

16. Female coaches at institutions across the nation are at a high risk of gender bias adversely affecting the terms and conditions of employment.

17. Female coaches of color are at an even higher risk of gender bias.

18. A female coach is judged differently and more harshly by her student athletes and their parents.

19. A female is expected to behave in a manner that is consistent with societal stereotypes about females. If she behaves in a stereotypically feminine manner, then she is blamed for being too soft as a coach. If she behaves the way we expect coaches to behave, then she is blamed for being too harsh. The double standards result in student-athlete complaints that are the direct result of gender bias. A university that relies, in whole or in part, upon complaints generated by bias or stereotypes is liable for gender discrimination.

---

[1] *Brine v. Univ of Iowa*, 90 F.3d 271, (8th Cir. 1996) (allowing both Title VII and IX retaliation claims); Doe *v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 562-63 (3d Cir. 2017) (rejecting preemption argument); *Preston v. Commonwealth of Virginia ex rel. New River Cmty. Coll.,* 31 F.3d 203, 205-206 (4th Cir. 1994) ("An implied private right of action exists for enforcement of Title IX . . . . [which] extends to employment discrimination on the basis of gender by educational institutions receiving federal funds."); 34 C.F.R. 106.58(a) ("The obligation to comply with this subpart [E] is not obviated or alleviated by the existence of any State or local law or other requirement which imposes prohibitions or limits upon employment of members of one sex which are not imposed upon members of the other sex.").

20. Racial stereotypes exacerbate the risk to female coaches of color. A female coach of color who behaves the way coaches are expected to behave is even further misperceived, due to racial stereotypes, as being too harsh.

21. Universities also react and respond differently to student athletes based on their gender. They coddle and patronize female athletes, while ignoring or overlooking male athletes who raise complaints about legitimate concerns. This result is discrimination based on gender and harms both male and female student athletes.

22. The result of these double standards put male athletes at risk (because their complaints are ignored) and place female coaches at risk (because they receive more complaints and are held to a higher standard).

23. Any of these biases and stereotypes—relying on biased student-athlete complaints against coaches, treating the complaints of female athletes differently than those by male athletes, or holding female coaches to double standards—are all forms of gender discrimination that violate the purpose and scope of Title VII and Title IX.

## JURISDICTION AND VENUE

24. Jurisdiction and venue exist in this Court, as the events giving rise to this lawsuit occurred in Crete, Nebraska.

25. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and the Court's pendent claim jurisdiction under 28 U.S.C. § 1367(a).

26. Venue is appropriate in this District under 28 U.S.C. §§ 1391(b) and (c).

27. Coach Powell's EEOC charge against Defendant was filed on March 11, 2020, within 300 days of the date of termination.

28. The EEOC charge alleged, *inter alia*, that Defendant discriminated against Coach Powell on the basis of sex and terminated her in retaliation for protected complaints.

29. The EEOC issued a Notice of Right to Sue dated August 21, 2020. This action is being brought within ninety (90) days from the issuance of the Notice of Right to Sue.

## PARTIES

30. Plaintiff Sheronda Powell, an African American female, is a resident of Crete, Nebraska.

31. Defendant Doane is an institution of higher education located in Crete, Nebraska whose athletic teams participate in the National Association of Intercollegiate Athletics (NAIA).

32. Doane is affiliated with the United Church of Christ, formerly known as the Congregational Church and serves as UCC's representative institution for the Nebraska, Rocky Mountain, Kansas-Oklahoma and South Dakota conferences.

## TITLE IX REGULATIONS

33. The Supreme Court of the United States has held that Title IX has an implied private right of action for discrimination and retaliation. *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979); *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512 (1982); *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 179 (2005).

34. The Supreme Court of the United States has held that Title IX cases provide for remedies including, but not limited to, monetary damages and equitable relief. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-56 (2009); *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002); *Davis v. Monroe County Bd. of Educ.*, 526, U.S. 629, 633 (1999); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 62–63 (1992).

35. Doane is a "recipient" of federal financial assistance within the meaning of Title IX. 34 C.F.R. § 106.2(h).

36. As a recipient of federal financial assistance, Doane must agree to comply with Title IX regulations codified at 34 C.F.R. § 106 *et seq*. as a condition precedent to receiving federal financial assistance. 34 C.F.R. § 106.4 ("Assurance required").

37. Doane Title IX obligations include protecting Doane students and employees from gender discrimination in education and employment.

38. The Title IX Education Programs or Activities Regulations prohibit Doane from providing any aid, benefit, or service to a student on the basis of sex including but not limited to actions that would:

> …
>
> (1) Treat one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit, or service;
>
> (2) Provide different aid, benefits, or services or provide aid, benefits, or services in a different manner;
>
> (3) Deny any person any such aid, benefit, or service;
>
> (4) Subject any person to separate or different rules of behavior, sanctions, or other treatment;
>
> (5) Apply any rule concerning the domicile or residence of a student or applicant, including eligibility for in-state fees and tuition;
>
> (6) Aid or perpetuate discrimination against any person by providing significant assistance to any agency, organization, or person which discriminates on the basis of sex in providing any aid, benefit or service to students or employees;
>
> (7) Otherwise limit any person in the enjoyment of any right, privilege, advantage, or opportunity.
>
> …
>
> 34 CFR § 106.31(b).

39. The Supreme Court upheld the validity of the employment regulations in *North Haven Bd. Of Educ. v. Bell*, 456 U.S. 512 (1982). *See also Brine v. Univ. of Iowa*, 90 F.3d 271, 275-76 (8th Cir. 1996) (looking to 34 C.F.R. § 106.51 regulations to define Title IX claim in conjunction with statute).

40. The Title IX Employment Regulations found in 34 C.F.R. § 106, Subpart E protect against various forms of employment discrimination including but not limited to:

> (1) Recruitment, advertising, and the process of application for employment;
>
> (2) Hiring, upgrading, promotion, consideration for and award of tenure, demotion, transfer, layoff, termination, application of nepotism policies, right of return from layoff, and rehiring;
>
> (3) Rates of pay or any other form of compensation, and changes in compensation;
>
> (4) Job assignments, classifications and structure, including position descriptions, lines of progression, and seniority lists;
>
> (5) The terms of any collective bargaining agreement;
>
> (6) Granting and return from leaves of absence, leave for pregnancy, childbirth, false pregnancy, termination of pregnancy, leave for persons of either sex to care for children or dependents, or any other leave;
>
> (7) Fringe benefits available by virtue of employment, whether or not administered by the recipient;
>
> (8) Selection and financial support for training, including apprenticeship, professional meetings, conferences, and other related activities, selection for tuition assistance, selection for sabbaticals and leaves of absence to pursue training;
>
> (9) Employer-sponsored activities, including those that are social or recreational; and
>
> (10) Any other term, condition, or privilege of employment.
>
> …
>
> 34 C.F.R. § 106.51(b).

41. Doane's obligations pursuant to the Title IX regulations also protect its students and employees from retaliation for making complaints protected under Title IX.

42. Title IX incorporates the anti-retaliation provisions of Title VI of the Civil Rights Act of 1964. 34 C.F.R. § 106.71 (incorporating the retaliation language of the regulations under Title VI [34 C.F.R. § 100.7(e)]).

43. Title IX makes it unlawful to retaliate against individuals—including coaches—not just when they file a complaint alleging a violation of Title IX, but also when they participate in a Title IX investigation, hearing, or proceeding, or advocate for others' Title IX rights.

44. In 1974 and 1975, Congress formalized its intent to include athletics programs under the protection of Title IX when it successfully proposed regulations that specifically addressed athletics. S. Conf. Rep. No. 1026, 93rd Cong., 2d Sess. 4271 (1974); 34 CFR § 106.41.

## STATEMENT OF FACTS

45. Coach Sheronda Powell was hired in August 2019, which is a fairly late time of year for basketball coaches to be hired.

46. Coach Powell was the only female African American head coach.

47. As head coach, Coach Powell would oversee both a junior varsity and varsity program.

48. Coach Powell knew that this would not be an easy season.

49. There were seven nationally ranked women's basketball teams in the conference, and Doane had a losing season the year before.

50. Coach Powell looked at this as a challenge and was excited to use her skills and expertise as a head coach to help bring the team together and change the culture to a positive,

respectful environment where both she and the team could utilize their skills to give them the best opportunity for success both on and off the court.

51. When Coach Powell arrived, she noticed the team was missing basic resources, equipment, and supplies.

52. They were missing uniforms.

53. They did not have backpacks.

54. They did not have practice gear.

55. In contrast, she noticed that the men's basketball team did have all of this equipment.

56. Coach Powell brought her equity concerns to the attention of Athletic Director Matthew Franzen. He indicated he would address it.

57. In November, Coach Powell was still struggling with the gear issue.

58. The gear she had gotten, through Mr. Franzen's directive, shrunk in the wash or did not fit properly so it was unwearable.

59. Coach Powell and her team also lacked proper equipment to run the scoreboard during practice.

60. The men's basketball team had an iPad to run the scoreboard and utilize during practice, but the women's basketball team did not.

61. Coach Powell asked three times if she could get an iPad, to which Mr. Franzen finally told her if she wanted one it would have to come out of her budget.

62. Coach Powell was never told she would need to use her budget to purchase an iPad in order to run the scoreboard and did not have enough money in her budget purchase one.

9

63. This was not something she could personally afford, so her mother gave her $250 to help purchase the iPad.

64. The men's basketball team had all the equipment and gear they needed, including an iPad to help with their practices that was provided by the school.

65. Unlike male coaches, Coach Powell had to beg and plead just to get basic practice equipment.

66. Female student athletes notice when men's sports are being treated more favorably than they are.

67. Coach Powell's team saw the men's basketball team and practice gear that fit.

68. Coach Powell's team saw the men's team running the scoreboard during practice.

69. Coach Powell's team saw the men's team being favored.

70. The lack of resource equity between the men's and women's basketball teams created tension and problems within the team for the female student athletes.

71. This discontent and feelings of knowing they are not being valued the same as the male teams lead to student complaints -generally about their coach because student athletes blame the coach for not being able to fix the inequities based on gender.

72. Coach Powell also inherited a women's basketball team that was rife with injuries.

73. Much to her surprise, the injuries and health conditions were significant, which she should have been made aware of by the training staff.

74. Coach Powell had asked Athletic Trainer Ethan Pearson, within a week of her hire, about her student athletes and any medical forms that needed to be filled out.

75. She was told they were beginning the process, but prior to preseason starting, she was not provided with any medical information on her team.

76. When Coach Powell started practices, she had an athlete who passed out three times in about a two-day period.

77. This was highly unusual, and when she commented on it to the trainers, the trainer told her the particular athlete had a vocal chord dysfunction and severe asthmas which affected her breathing.

78. Coach Powell was never made aware of the breathing problems.

79. This is information that Coach Powell absolutely should have had to be effective with her athletes.

80. Upon information and belief male coaches at Doane University were kept informed by training staff about their players' health issues.

81. She reported this to Mr. Franzen that she had not been made aware of these issues, and he told her that she needed to work it out with the trainer, minimizing and dismissing her concerns that her female student athletes were not receiving proper medical treatment and athletic training services.

82. Mr. Franzen also failed to address issues Coach Powell raised regarding her assistant coach.

83. In October, Coach Powell told Mr. Franzen and HR Representative Laura Northrup that she was having difficulties with her assistant coach.

84. Coach Powell indicated that Assistant Coach Marissa Webb was refusing to do things as Coach Powell was instructing, and Coach Webb was choosing to do things that Coach Powell would not authorize her to do.

85. As an example of the type of actions that she would do without authorization, Assistant Coach Webb sent a text message to the student athletes that they had to notify the

11

coaches of their whereabouts and whether they were staying or leaving campus for the weekend, including whether they were not staying at their own residence for an evening.

86. This requirement was not authorized by Coach Powell.

87. Not surprisingly, Assistant Coach Webb's requirement was very ill-received by the student athletes.

88. Assistant Coach Webb exhibited a pattern of taking actions without consulting with or getting approval from Coach Powell.

89. Coach Powell told Mr. Franzen and Human Resources Director Laura Northrup that she was documenting her assistant coach and asked them for help on how to move forward because she believed she was going to have to fire her.

90. After she asked for help, Ms. Northrup asked Mr. Franzen if he wanted to handle the insubordination issue.

91. Mr. Franzen said he was not going to respond because it was a "female thing" indicating that Coach Powell's request for help with dealing with an insubordinate and divisive staff member was unworthy of attention specifically because the parties involved were women.

92. Upon information and belief, complained by male coaches about insubordination or divisive behavior by assistant coaches are responded to.

93. The message was clear that Mr. Franzen did not value Coach Powell as a coach in the same way he would value a male.

94. Despite the problems with her assistant coach and problems from administration sending her clear messages that she and the basketball team were not going to get the same resources and opportunities as the men's team, Coach Powell tried to keep up a positive attitude.

95. She was seeing some progress within the team.

96. They were making strides, but Coach Powell noticed some problems with their intensity and drive.

97. She would try to motivate them. She occasionally quoted scripture, and for those who were not religious, she would use parables to help motivate her team.

98. On or around November 8, 2019, the women's basketball team had a 6:00 a.m. practice.

99. The team was not performing up to Coach Powell's expectations.

100. After running four or five drills and seeing no improvement in their motivation or intensity, Coach Powell told the team that they had not come ready for practice today and that they should just go home for the day.

101. She went to her office, and Mr. Franzen came in a little later and asked her what happened.

102. She told him the team had not come ready to practice, and so she sent them home so they could regroup and come back to practice on Monday.

103. Mr. Franzen immediately questioned her decision and told her that the "girls were broken."

104. Coach Powell told him that coaches end practices regularly when they are not going well, and it is a coaching strategy.

105. He responded that it was fine for coaches to end a practice for strategic reasons, but that was not what he hired Coach Powell to do.

106. Upon information and belief, male coaches, unlike plaintiff, are free to exercise their discretion in determining if it is appropriate to end a practice for strategic reasons.

107. Coach Powell was entirely confused by the mixed signals that he understood that ending a practice is a coaching strategy, but that he was not going to allow her to do it.

108. On approximately Monday, November 11, 2019, Coach Powell ran practice and it was one of the best practices they had.

109. On November 16, 2019, the team had a game, and while they did not win, it was the best game that they had played so far.

110. It was exactly the type of regrouping and well-played loss that helps a team unify and make progress.

111. On November 19, 2019, Mr. Franzen told Coach Powell that she was not permitted to pray with her team any longer.

112. She was puzzled by this comment for many reasons. She knew the baseball team held Bible studies once a week, and she had been given the option to hold Bible studies with her team.

113. Additionally, when she was first hired, she was shown the auditorium and was told this is where she could hold chapel with her team.

114. Further, Mr. Franzen had asked her to attend church with him on two occasions, which she and her husband did.

115. Coach Powell told Mr. Franzen she did not understand his comments because she thought Doane was a religiously affiliated school, but she also told him that if that was his directive, she would follow it, which she did.

116. Upon information and belief, male coaches, unlike Plaintiff, are allowed to pray with their team.

117. On November 22, 2019, Assistant Coach Webb gave her notice of resignation. Coach Webb indicated she would be leaving on December 7, 2019.

118. On Monday, November 25, 2019, Coach Powell was asked to meet with Mr. Franzen and Ms. Northrup an hour before practice was scheduled to start.

119. During this meeting, Mr. Franzen told Coach Powell that she needed to resign.

120. When she asked why, they said because the assistant coach was resigning, and they did not see any way for her to continue.

121. Mr. Northrup told Coach Powell to turn in her keys and school credit card, and that she vacate her office.

122. Coach Powell was terminated on November 25, 2019.

## FIRST CAUSE OF ACTION
## VIOLATION OF TITLE VII
### (Gender Discrimination & Retaliation)

123. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

124. Coach Powell has satisfied all administrative requirements and conditions precedent for bringing suit under Title VII on this claim.

125. Under the provisions of Title VII, it is unlawful for an employer to discriminate against an employee on the basis of sex or to retaliate against her for engaging in activity protected by Title VII.

126. At all times, Defendant was an "employer" within the meaning of Title VII.

127. Defendant's conduct was discriminatory against Coach Powell with respect to failing to treat her equally to male coaches, allowing her to be discriminated against by her supervisors, subjecting her to different and heightened scrutiny at work, holding her to different

and higher standards, and retaliating against her for engaging in conduct protected by Title VII, all in violation of Title VII.

128. On information and belief, in so violating Title VII, Defendant acted with malice or in reckless disregard of Coach Powell's rights under Title VII.

129. As a result of Defendant's conduct, Coach Powell suffered loss of employment, loss of wages and benefits, emotional pain and suffering, humiliation, embarrassment, inconvenience, damage to her reputation, loss of career, and out-of-pocket expenses.

130. The actions of Defendant also require the imposition of specific equitable and injunctive relief necessary to enforce the mandates of Title VII, including reinstatement, front pay, training, oversight of the athletic department and Doane to ensure gender equity throughout the university, and any other equitable relief deemed appropriate by the Court.

### SECOND CAUSE OF ACTION
### VIOLATION OF TITLE IX
### (Gender Discrimination & Retaliation)

131. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

132. Defendant's educational programs and activities receive federal financial assistance within the meaning of Title IX.

133. Title IX regulations require Defendant to take such remedial action as is necessary to overcome the effects of sex discrimination in violation of Title IX.

134. Through comments and behaviors motivated by gender bias, Doane also discriminated against Coach Powell's female student athletes in violation of Title IX, 34 C.F.R. § 106.41, for which Coach Powell was advocating on her student-athlete's behalf. Doane did

not provide women's basketball players equal athletic opportunities in several areas which include but are not limited to:

    a. The provision of equipment and supplies;

    b. Scheduling of games and practice time;

    c. Travel and per diem allowance;

    d. Opportunity to receive coaching;

    e. Assignment and compensation for coaches;

    f. Provision of practice and competitive facilities;

    g. Provision of medical and training services; and

    h. Publicity.

135. When Coach Powell complained about discriminatory treatment of her students and gender inequities, she was retaliated against by the administration by being terminated in violation of Title IX, among other things.

136. Defendant violated Coach Powell's rights, and the rights of female student athletes, when they disciplined and fired her for advocating for female student athletes to receive equal opportunities to receive competitive coaching, the provision of equipment and supplies, provision of competitive facilities, medical training and other opportunities afforded by Title IX and as required by 34 C.F.R. § 106.41, *et seq.*

137. Title IX incorporates the anti-retaliation provisions of Title VI of the Civil Rights Act of 1964. 34 C.F.R. § 106.71 (incorporating the retaliation language of the regulations under Title VI [34 C.F.R. § 100.7(e)]).

138. As a proximate result of Defendant's actions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

139. Defendant acted with deliberate indifference and willful and wanton disregard to Coach Powell's federally protected rights.

140. As a result of Defendant's actions, Coach Powell seeks monetary damages including, but not limited to, economic and career loss and damages for the indignity and humiliation of being retaliated against.

141. The actions of Defendant also require the imposition of specific equitable and injunctive relief necessary to enforce the mandates of Title VII and Title IX including, but not limited to:

   a. Reinstatement of Plaintiff to her position as head coach;

   b. Training on the removal of implicit bias and gender stereotypes from the assessment of female students and female coaches;

   c. A court order requiring that the Defendant be audited regarding its compliance with Title IX and that any failures or violations of Title IX be immediately remedied by the university;

   d. That Defendant be required to take steps to not only comply with Title IX, but to provide additional remedies and funding to make up for shortcomings and the failure to make progress as required by Title IX; and

   e. Such other and further relief under Title IX as needed to make Coach Powell and other females similarly situated at Defendant whole.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Coach Powell requests judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages; reinstatement or front pay; lost wages and benefits; compensatory damages for loss of employment, loss of

wages and benefits, emotional pain and suffering, indignity, humiliation, embarrassment, inconvenience, damage to her reputation, loss of career, and out-of-pocket expenses, punitive damages, equitable relief, prejudgment and post-judgment interest as allowed by law, attorneys' fees, expert witness fees, costs, and any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purposes of Title VII and Title IX.

    Respectfully submitted,

    WALENTINE O'TOOLE, LLP
    */s/ Jamie M. Hurst*
    Jamie M. Hurst NE25256
    Walentine O'Toole LLP
    11240 Davenport Street
    PO Box 540125
    Omaha, NE 68154
    Phone: 402-330-6300
    Fax:    402-330-6303
    jhurst@womglaw.com


    NEWKIRK ZWAGERMAN, P.L.C.

    */s/ Jill M. Zwagerman*
    Jill Zwagerman  IA Bar No.  AT0000324
    jzwagerman@newkirklaw.com
    Thomas Bullock
    tbullock@newkirklaw.com
    521 E. Locust Street, Suite 300
    Des Moines, IA  50309
    Tel: (515) 883-2000
    Fax: (515) 883-2004

    ATTORNEYS FOR PLAINTIFF