IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHERONDA POWELL, | |
| Plaintiff, | 8:20CV427 |
| vs. | |
| DOANE UNIVERSITY, | **ORDER** |
| Defendant. | |

This matter is before the Court on Plaintiff's Motion to Compel. (Filing No. 65.) For the reasons explained below, the motion will be granted, in part.

## BACKGROUND

In August 2019, Plaintiff was hired by Defendant to coach its women's basketball team. Approximately three months later, Plaintiff was terminated. Plaintiff maintains she was fired due to complaints she made about inadequate resources for female athletes compared to male athletes. Plaintiff contends her firing was also the result of her requesting assistance in handling problems with her assistant coach. Defendant maintains, however, that Plaintiff was terminated for performance-related issues, as evidenced, in part, by complaints made by student athletes.

On or about March 11, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation. (Filing No. 74-1.) On April 21, 2020, Defendant responded to the Charge of Discrimination and produced documents as requested by the EEOC. (Filing No. 74-1.) Laura Northup ("Ms. Northup"), Defendant's now former Director of Human Resources, has averred that while

processing the administrative complaint, she collected and preserved information and documents she perceived to be relevant to Plaintiff's claims, including Plaintiff's employment documents, emails, and the personnel files of Defendant's head coaches. (Filing No. 74-1.)

Plaintiff filed this suit on October 16, 2020, asserting claims for employment discrimination based on gender and retaliation in violation of Title VII and Title IX. (Filing No. 1.) Ms. Northup received a litigation hold memorandum from counsel on November 18, 2020. (Filing No. 74-1.) Ms. Northup shared the litigation hold memorandum with Matthew Franzen ("Mr. Franzen"), who was Defendant's Athletic Director at the time. (Filing No. 74-1.) Ms. Northup also shared the memorandum with Julie Schmidt (VP of Finance and Administration Business Office), Dr. Jacque Carter (President), Tricia Mohr (Chief of Staff to the President), Carol Bietz (payroll), Tracia Mohr (Chief of Staff), Brian Leisy (Executive Assistant to the President), and Derek Bierman (IT). (Filing No. 74-1.) Ms. Northup maintains that in accordance with the memorandum, Defendant preserved: all documents related to Plaintiff's employment; all documents related to complaints raised by Plaintiff; all documents pertaining to Plaintiff; all handbooks, policies, procedures effective during Plaintiff's employment; and all documents maintained in the personnel files of coaches. (Filing No. 74-1.)

Mr. Franzen's last day of employment with Defendant was December 11, 2020. (Filing No. 74-1.) Mr. Franzen averred in a declaration submitted in connection with this motion that before his last day of employment, he gave the documents he believed to be relevant to Plaintiff's claims to Ms. Northup. (Filing No. 74-5.) Ms. Northup has stated that she believed Mr. Franzen turned over all relevant documents. (Filing No. 74-1.) Ms. Northup maintains that Mr. Franzen's laptop and documents on the laptop were preserved, as well as Mr. Franzen's emails. (Filing No. 74-1.)

In December 2020, Jeff Johnson ("Mr. Johnson") was hired as Interim Athletic Director, replacing Mr. Franzen. (Filing No. 74-1.) Mr. Johnson served as Interim Athletic Director for around six months. (Filing No. 65-9.) Mr. Franzen has stated that he told Mr. Johnson that Plaintiff's case was pending and that he had already provided relevant documents to human resources. (Filing No. 74-5.) Ms. Northup has stated that she did not communicate with Mr. Johnson about this case, or the litigation hold, because she believed all relevant documents had

been provided to her and because Mr. Franzen's laptop and emails had been preserved. (Filing No. 74-1.)

Ms. Northup's last day of employment with Defendant was January 15, 2021. (Filing No. 74-1.) According to Ms. Northup, Defendant preserved her emails, as well as her laptop and all electronic documents on her laptop when she left. (Filing No. 74-1.) Ms. Northup also communicated with Anne Ziola ("Ms. Ziola"), who had been promoted to assume the Director of Human Resources position, about this litigation. (Filing No. 74-1.) Ms. Northup has averred that she showed Ms. Ziola where the documents regarding the case were located, including documents related to Plaintiff, personnel files, and the electronic copies of the information/documents sent to counsel. (Filing No. 74-1.) She also informed Ms. Ziola that Mr. Franzen and Ms. Northup's laptops and emails had been preserved. (Filing No. 74-1.)

On March 11, 2021, Plaintiff served Defendant with discovery requests. (Filing No. 24.) The discovery included Document Request No. 21, which sought: "Documents chronologically organized by athletic program and related to evaluations of each athletic program since January 1, 2015 to the present including student-athletes' evaluations, end of the year evaluations, or exit evaluations of their respective athletic programs." (Filing No. 65-2.) Defendant responded to Plaintiff's discovery requests on April 19, 2021, but objected to Request No. 21 on grounds that it was overly broad, unduly burdensome, and sought irrelevant information. (Filing No. 65-2.)

Between June 2021 and September 2021, counsel conferred about the production of documents responsive to Request No. 21. (Filing No. 74-13.) In approximately August 2021, Ms. Ziola was asked to determine whether there were athletic program evaluations, and, if they existed, where they were located. (Filing No. 74-9.) Ms. Ziola has stated that in or around August and September 2021, she looked for the documents in personnel files; Mr. Franzen's emails and documents; and Ms. Northup's documents and emails. (Filing No. 74-9.) Ms. Ziola also communicated with Mark Wateska ("Mr. Wateska") about the documents. (Filing No. 74-9; Filing No. 74-12.) Mr. Wateska had been hired as Defendant's Athletic Director in June 2021. (Filing No. 74-12.)

Mr. Wateska asserted in a declaration submitted in connection with this motion that he cleaned out the athletic director's office in July and August 2021, to make it functional. (Filing No. 74-12.) When Mr. Wateska found copies of documents related to this case in the office, he gave them to Ms. Ziola. (Filing No. 74-12.) Ms. Ziola testified the documents Mr. Wateska gave her were not new and had already been provided to counsel. (Filing No. 65-9.) Mr. Wateska said that shortly after he began his employment, he also went through the filing cabinets in the office and discarded documents, the majority of which were decades old. (Filing No. 74-12.) In or around September 2021, after communicating with Ms. Ziola about athletic program evaluations, Mr. Wateska searched his office and located documents called "Student-Athlete-End-of-Season Surveys," which he turned over. (Filing No. 74-12.)

On September 1, 2021, Plaintiff's counsel contacted the Court regarding a discovery dispute, which encompassed the dispute regarding Request No. 21. The Court directed Plaintiff to file a motion to compel, which Plaintiff did. (Filing No. 35.) On April 12, 2022, the Court granted Plaintiff's motion to compel, in part, and ordered Defendant to produce certain information in response to Document Request No. 21, specifically, athletic program evaluations maintained by Defendant, excluding those exclusively contained in student-athlete files. (Filing No. 42.)

Defendant provided supplemental answers and documents to Plaintiff on July 6, 2022, which included Student-Athlete-End-of-Season Surveys. (Filing No. 74-9.) Mr. Franzen prepared Student-Athlete-End-of-Season Surveys for Defendant's athletic programs, in his role as Athletic Director. (Filing No. 74-5.) Student-Athlete-End-of-Season Surveys were kept in each head coach's personnel file. (Filing No. 74-5.) The Student-Athlete-End-of-Season Surveys contained Mr. Franzen's analysis of information gathered from student-athlete surveys (also referred to as "raw data"). (Filing No. 74-5.) Student-athletes were given the opportunity to anonymously complete student-athlete surveys so Defendant could obtain honest feedback from students regarding their experiences as student-athletes. (Filing No. 74-5.) Mr. Franzen claims he incorporated almost all the comments from student-athlete surveys in his Student-Athlete-

4

End-of-Season Surveys.[1] (Filing No. 74-5.) Defendant did not produce any actual student-athlete surveys in response to Request No. 21.

On July 22, 2022, Plaintiff's counsel sent Defendant a letter requesting the student-athlete surveys behind the Student-Athlete-End-of-Season Surveys. (Filing No. 65-3.) On August 8, 2022, Defendant's counsel responded, stating Defendant had produced all documents responsive to Request No. 21. (Filing No. 65-5.) Counsel met and conferred regarding this issue on August 12, 2022, and Defendant's counsel explained that it was her understanding that the student-athlete surveys could not be produced because it was Defendant's practice to shred the surveys once excerpts from them were incorporated into Student-Athlete-End-of-Season Surveys. (Filing No. 65-4.)

On October 28, 2022, Plaintiff deposed Mr. Franzen. He testified that he had been the custodian of the student-athlete surveys and that he never destroyed them. (Filing No. 65-7.) Mr. Franzen said that he left the student-athlete surveys in the file cabinet in his former office. (Filing No. 74-5.) Mr. Franzen did not share with anyone that he kept the student-athlete surveys in his filing cabinet until his deposition. (Filing No. 74-5.) Mr. Franzen testified that before he left employment with Defendant, he told Mr. Johnson that he believed all relevant documents had been turned over. (Filing No. 74-5.) Mr. Franzen did not believe the student-athlete surveys were relevant because they were anonymous and were used to receive feedback about student-athletes' experiences. (Filing No. 74-5.) Mr. Franzen also did not recognize the relevance of the documents because during Plaintiff's employment, he did not conduct a student-athlete survey of the women's basketball program. (Filing No. 74-5.) After Mr. Franzen's deposition, Plaintiff again requested that the student-athlete surveys be produced. (Filing No. 65-10.) Defendant reported that the student-athlete surveys could not be located.

Mr. Wateska was provided a blank student-athlete survey. (Filing No. 74-12.) Mr. Wateska averred in his declaration that he did not find or discard any student-athlete surveys when he cleaned out the filing cabinet or the athletic director's office (Mr. Franzen's former

---

[1] A summary of the results from Student-Athlete-End-of-Season Surveys was also included in Mr. Franzen's evaluation of each coach. The evaluations were set out in documents called "Doane University Employee Feedback and Development Program." (Filing No. 74-5; Filing No. 78.)

5

office) in July and August 2021, nor did he find any student-athlete surveys in his September 2021 search. (Filing No. 74-12.) Ms. Ziola instructed Mr. Wateska to search his filing cabinet for the student-athlete surveys again in November 2022. (Filing No. 74-12.) Mr. Wateska did not locate any student-athlete surveys during that search. (Filing No. 74-12.) Ms. Ziola also searched Mr. Wateska's office and filing cabinet in April 2023, and she did not find any student-athlete surveys. (Filing No. 74-9.) Ms. Ziola testified in her deposition that between her and team members in human resources, sixty hours or more have been spent looking for documents. (Filing No. 65-9.)

Ms. Northup, Ms. Ziola, Mr. Franzen, and Mr. Wateska have all sworn that they have never deleted or destroyed documents or emails related to Plaintiff's employment with Defendant or documents secured in the personnel files of any head coach. (Filing No. 74-1; Filing No. 74-5; Filing No. 74-9.) They have also sworn they have never deleted or destroyed any documents or emails related to any complaints or concerns about any head coach. (Filing No. 74-1; Filing No. 74-5; Filing No. 74-9.)

### DISCUSSION

#### 1. Motion to Compel

The Court previously ordered Defendant to produce certain information responsive to Request No. 21, including athletic program evaluations. The student-athlete surveys fit within the category of documents the Court ordered be produced. The Court will not revisit its ruling regarding the relevance and production of the athletic program evaluations, including the student-athlete surveys. Therefore, if the student-athlete surveys are located, they must be produced.

#### 2. Sanctions

Plaintiff requests that Defendant be sanctioned for spoliation of evidence due to Defendant's failure to collect, preserve and produce the student-athlete surveys. Plaintiff requests that Defendant be sanctioned through the entry of a default judgment. Alternatively, Plaintiff requests that the Court prohibit Defendant from submitting evidence to support a summary judgment motion, as well as give an adverse inference jury instruction. Plaintiff argues sanctions

are appropriate because the student-athlete surveys were requested in discovery and available when this suit was filed, but Defendant deliberately chose not to collect and preserve them. Plaintiff contends Defendant acted in bad faith because it did not begin searching for the student-athlete surveys until October 2022, which was six months after the Court ordered that program evaluations be produced and around eighteen months after Request No. 21 was served.

"Spoliation is the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Coral Group, Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 440 (W.D. Mo. 2012) (quotation omitted). "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." *E*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D. N.Y. 2003). However, "a corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Litig.*, 299 F.R.D. 502, 517-18 (S.D. W. Va. 2014) (quotation omitted).

Using its inherent authority, a court may impose a variety of sanctions when a party abuses the judicial process by destroying evidence. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 280 (8th Cir. 1995). For instance, a court may give a jury instruction on the "spoliation inference," which permits the jury to assume that the destroyed evidence would have been unfavorable to the position of the offending party. *Ameriwood Industries, Inc. v. Liberman*, No. 4:06CV524, 2007 WL 5110313, at *4 (E.D. Mo. July 3, 2017). A court may also "exclude certain evidence of the offending party; enter judgment of default in favor of the prejudiced party; and/or impose the prejudiced party's attorney's fees on the offending party." *Id*. The most severe sanctions are reserved for those litigants demonstrating "blatant disregard of the Court's orders and discovery rules [and] engaging in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999).

"A spoliation-of-evidence sanction requires 'a finding of intentional destruction indicating a desire to suppress the truth.'" *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir.2007) (quoting *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746) (8th Cir. 2004)). "The Eighth Circuit has explicitly rejected a negligence standard as a basis for spoliation sanctions." *James v. Midlands Choice, Inc.*, No. 8:13CV69, 2014 WL 12605516, at *5 (D. Neb. Dec. 5, 2014). *See also United States v. Tyerman*, 701 F.3d 552, 561 (8th Cir. 2012) ("[T]his court certainly rejected a spoliation instruction on the basis of mere negligence."). "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines*, 485 F.3d at 1035 (quotation omitted). In addition, "[t]here must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." *Stevenson*, 354 F.3d at 748.

The parties agree that Defendant had a duty to preserve documents and evidence, and Mr. Franzen clearly testified he left the student-athlete surveys in his office when he ended his employment in December 2020. The question is whether Defendant intentionally lost and/or destroyed the student-athlete surveys to suppress the truth. Having reviewed the matter, the Court finds there is no evidence that Defendant lost or destroyed these documents to prevent their use in this lawsuit.

The record shows Defendant took its obligation to preserve evidence seriously and took steps to collect, segregate, and save relevant information. When the EEOC charge was filed, Defendant began preserving documents and produced documents as requested by the EEOC. A litigation hold memorandum was circulated after this case was filed and Defendant preserved documents related to Plaintiff's employment; documents related to complaints raised by Plaintiff; documents pertaining to Plaintiff; handbooks, policies, procedures effective during Plaintiff's employment; and documents maintained in the personnel files of coaches. Moreover, when Mr. Franzen and Ms. Northup left their employment, steps were taken to ensure that their documents, emails, and laptops were preserved. Ms. Northup and Mr. Franzen believed they had given all relevant documents in their possession to human resources when they left their employment. They communicated to their successors that relevant documents had been given to human resources. Ms. Northup, Ms. Ziola, Mr. Franzen, and Mr. Wateska have all sworn they

never deleted or destroyed any documents or emails related to any complaints or concerns about any head coach.

There is no evidence that the student-athlete surveys were intentionally lost or destroyed. The record reveals that Defendant was not aware that the student-athlete surveys still existed until Mr. Franzen's deposition in October 2022. Mr. Franzen testified during his deposition that he left the student-athlete surveys in his file cabinet when he ended his employment. Mr. Franzen said he did not tell anyone about the student-athlete surveys because he did not believe they were relevant to the case. Mr. Franzen explained that he did not recognize the relevance of the documents because the basketball program was not evaluated during Plaintiff's employment, and because the student-athlete surveys were just used as a mechanism to obtain anonymous feedback from student-athletes. Once Defendant became aware of the student-athlete surveys, it looked for them extensively. It appears to the Court that the student-athlete surveys were inadvertently lost due to the turnover of employees (including Mr. Franzen) that occurred in Defendant's athletic department and human resources shortly after this suit was filed. At most, Defendant's conduct in connection with the collection and preservation of the student-athlete surveys amounts to negligence, which is an insufficient basis for spoliation sanctions.

Plaintiff argues Defendant must have intentionally destroyed the student-athlete surveys because Defendant was aware that Plaintiff was seeking their production but did nothing to collect and preserve them. Plaintiff argues Defendant deliberately chose not to collect the documents while asserting an objection to Request No. 21. However, there is no evidence that Plaintiff's objection to Request No. 21 was part of a strategy to lose or hide documents. Beginning in June 2021, counsel conferred about the production of documents responsive to Request No. 21. Around August 2021, Ms. Ziola was asked to determine whether there were athletic program evaluations. Ms. Ziola looked for athletic program evaluations in multiple places, but she did not find student-athlete surveys. She also communicated with Mr. Wateska about athletic program evaluations and asked him to search his office. Mr. Wateska maintains he did not find any student-athlete surveys during his search, and Mr. Wateska denies ever seeing or discarding any student-athlete surveys.

9

Following resolution of the discovery dispute involving Request No. 21, Defendant produced the Student-Athlete-End-of-Season Surveys, which were prepared, in part, using student-athlete surveys. Once the Student-Athlete-End-of-Season Surveys were produced, Plaintiff requested production of the raw data used to complete the Student-Athlete-End-of-Season Surveys—the student-athlete surveys themselves.  If Defendant had intended to destroy the student-athlete surveys in an effort to suppress the truth, it is logical to conclude that the Student-Athlete-End-of-Season surveys, which incorporated Mr. Franzen's analysis of information gathered from student-athlete surveys, would have also been lost or destroyed. The record does not support the conclusion that Defendant intentionally destroyed or lost the student-athlete surveys to suppress the truth.  Therefore, the Court will not impose sanctions for spoliation of evidence.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel is granted, in part.  ([Filing No. 65](#).)  Defendant shall produce the student-athlete surveys if they are located.  Plaintiff's request for sanctions is denied.

Dated this 28th day of July, 2023.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge